Filed 2/24/26  P. v. Fregia CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARK FREGIA,<br><br>        Defendant and Appellant. | A172860<br><br>(Contra Costa County<br>Super. Ct. No. 05000414300) |

Defendant Mark Fregia poured gasoline on his former girlfriend and lit her on fire while they were in a car with their two-year-old son and the woman's six-year-old daughter, resulting in both children's deaths.  In 2007, a jury convicted Fregia of two counts of first degree felony murder with multiple-murder, kidnapping, and mayhem special circumstances, as well as attempted voluntary manslaughter and other felonies.  After the jury rejected the death penalty, he was sentenced to life in prison without the possibility of parole plus 59 years and four months.  In 2010, this division affirmed the judgment in an unpublished opinion.  (*People v. Fregia* (May 11, 2010, A121158) (*Fregia*).)

In June 2023, Fregia filed a petition for resentencing under Penal Code[1] section 1172.6, based on changes to the law of felony murder made by

_____

[1] All further statutory references are to the Penal Code.

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437). (See *People v. Hin* (2025) 17 Cal.5th 401, 441.) After an evidentiary hearing, the trial court denied the petition, finding that Fregia was still guilty of felony murder under current law as "the actual killer" of both children during an arson. (§§ 189, subd. (e)(1), 1172.6, subd. (d)(3).)

Fregia now appeals from the denial of his petition for resentencing. His appointed appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216, 221–222 (*Delgadillo*) stating that there are no arguable issues. Under *Delgadillo*, we gave Fregia notice that he had a right to file a supplemental brief or his appeal could be dismissed. (See *id.* at pp. 231–232.)

Fregia filed a supplemental brief raising numerous claims, including that he received ineffective assistance of appellate counsel and does not qualify as an actual killer.[2] We reject all of his claims and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The underlying facts are drawn from the trial court's summary of the trial evidence in its written order denying Fregia's resentencing petition. In 2000, Fregia began dating Erin Weaver, who had a daughter, Devlin, from a previous relationship. Weaver soon became pregnant and gave birth to her and Fregia's son, Daelin, in June 2001. Fregia was physically abusive, and Weaver ended the relationship when Daelin was about a year old.

---

[2] On January 12, 2026, this court dismissed the appeal after not receiving a supplemental brief from Fregia. We granted Fregia's motion to reinstate the appeal after learning he had prepared a brief that was apparently lost in the mail. Fregia's appellate counsel submitted the 10-page supplemental brief with the motion, and Fregia subsequently mailed both the brief and accompanying exhibits to this court. This opinion addresses the longer, mailed submission, which we received on February 11, 2026.

On December 18, 2003, Fregia persuaded Weaver to go Christmas shopping at a Vallejo toy store with him and the children. Fregia drove, with Weaver in the front passenger's seat and two-year-old Daelin and six-year-old Devlin in the back seat. Instead of heading to the toy store, Fregia crossed the bridge into Crockett. While driving down the freeway, Fregia asked Devlin to hand him a soda bottle that was underneath the driver's seat. He then poured the liquid inside the bottle, which was gasoline, onto Weaver. Holding a lighter in each hand, Fregia "flicked one of [them] close to . . . Weaver, lighting her on fire."

Weaver grabbed the steering wheel, forced the car off the road, and jumped out in an effort to extinguish herself. When she went back to get the children, the car was on fire and she could not retrieve them. Fregia did not provide any help. Instead, he walked away and ultimately fled after carjacking a passerby who stopped at the scene. The children both died of smoke inhalation and carbon monoxide toxicity. Weaver sustained second- and third-degree burns to 85 percent of her body and was hospitalized for nine months.

Fregia, who testified in his own defense, claimed that he procured the gasoline intending only to "scare" Weaver. He admitted that he poured the gasoline on her and ignited the lighter, and he claimed that he did not help her afterward because he thought she "was okay after being lit on fire."

The jury convicted Fregia of two counts of first degree felony murder of the children, with the special circumstances of multiple murder, kidnapping, and mayhem.[3] It acquitted him of attempted murder but found him guilty of

---

[3] Fregia was convicted of murder under section 187, and the special circumstances were under section 190.2, subdivision (a)(3) (multiple murder), (17)(B) (kidnapping), and (17)(J) (mayhem).

attempted voluntary manslaughter of Weaver and several other felonies, including arson and kidnapping.[4]  In February 2008, after the jury declined to impose the death penalty, the trial court sentenced Fregia to life without the possibility of parole for the murders and a total of 59 years, four months in prison for the remaining convictions and enhancements.  (*Ibid.*)

In June 2023, Fregia filed a petition for resentencing under section 1172.6.  On a form, he checked boxes indicating that he met all the statutory requirements for relief, including that he "could not presently be convicted of murder . . . because of changes made to . . . [sections] 188 and 189, effective January 1, 2019."  (See § 1172.6, subd. (a).)  The prosecution opposed the petition, arguing that Fregia was ineligible for relief because the record of conviction established he was the actual killer.  Fregia replied that he made a prima facie showing of entitlement to relief and was entitled to an evidentiary hearing.  The trial court—the same judge who presided over the trial—agreed that Fregia established a prima facie case for relief and issued an order to show cause.  (See § 1172.6, subd. (c).)

In March 2025, after the parties provided additional briefing and submitted portions of the trial record, the trial court issued the order denying Fregia's resentencing petition.  The court considered various documents from the record of conviction, including the jury instructions, verdicts, and

---

[4] Fregia was acquitted of attempted murder under sections 187, subdivision (a), and 664, subdivision (a).  He was convicted of attempted voluntary manslaughter under sections 192, subdivision (a), and 664, and the jury found true that he personally inflicted great bodily injury during this crime under section 12022.7, subdivision (a).  He was also convicted of arson under section 451, subdivision (a), with enhancements under section 451.1 for causing great bodily injury to more than one person and use of an accelerant; aggravated mayhem under section 205; kidnapping under section 207, subdivision (a); and carjacking under section 215, subdivision (a).

4

reporter's transcript of the trial. Based on this evidence, the court concluded beyond a reasonable doubt that Fregia was guilty of felony murder under a still-valid theory because he "was the actual killer of both [children] in the perpetration of an arson" under section 189, subdivision (e)(1). Although noting that "[s]imply being a proximate cause of . . . death would generally not be sufficient to find that an individual was an actual killer," the court found that Fregia's "actions directly led to the victims' death" without any intervening factors. The court thus concluded that Fregia was not entitled to relief under section 1172.6.

## II.
### DISCUSSION

We begin by addressing Fregia's complaints about his appointed counsel in this appeal. Fregia argues that counsel provided ineffective assistance, claiming that counsel filed the *Delgadillo* brief against his wishes and refused to send him the record on appeal. Fregia asks us to strike the *Delgadillo* brief, construe his supplemental brief as a motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), and appoint "a limited scope representative" or, at minimum, permit him to represent himself.

Although Fregia submitted exhibits with his supplemental brief, neither those materials nor anything else in the record suffices to show that appellate counsel performed deficiently. (See *In re Hampton* (2020) 48 Cal.App.5th 463, 477.) We also decline to strike the *Delgadillo* brief or construe Fregia's supplemental brief as a *Marsden* motion, although we will "evaluate the specific arguments" he raised in the supplemental brief as required. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

Fregia also complains that the trial court and other attorneys not limited to his appellate counsel have conspired to deprive him of due process. But he fails to describe any behavior amounting to bias or any other violation

5

of his rights, and nothing in the record or his submitted materials supports his contentions.[5]  (See *People v. Holford* (2012) 203 Cal.App.4th 155, 186 [claims unsupported by "reasoned argument or citation to authority" are forfeited].)

Throughout his supplemental brief, Fregia cites ameliorative legislation unrelated to section 1172.6 and numerous other statutes and authorities that have nothing to do with this appeal.  In this proceeding, we cannot consider issues such as whether he qualifies for relief under the Racial Justice Act or whether he should be civilly committed due to mental illness instead of continuing to serve time in prison.  Instead, our task is to review the trial court's decision to deny his section 1172.6 petition.

On this point, the only error that Fregia alleges is that he does not qualify as an actual killer because the jury determined that he did not have an intent to kill and the children's deaths were "accidental."  Although nothing about the verdicts suggests the jury thought the deaths were accidental, we will assume without deciding that Fregia's acquittal of attempted murder of Weaver establishes that the jury found he did not have an intent to kill her or the children.

Even so, a defendant need not have intended to kill to be convicted of felony murder.  Under section 189 as amended by Senate Bill No. 1437, a defendant must *either* be "the actual killer," *or* have aided and abetted the murder "with the intent to kill," *or* be "a major participant in the underlying felony [who] acted with reckless indifference to human life."  (§ 189, subd. (e).)  In other words, a killing "need not be intentional, according to the

---

[5] To the extent Fregia suggests that the judge who presided over his trial should be recused from this proceeding, section 1172.6 undermines his position.  (See § 1172.6, subd. (b)(1) [judge who originally sentenced petitioner should preside over resentencing].)

felony-murder doctrine, when the defendant is the actual killer." (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1024.)  Rather, the actual killer, defined as one "who personally committed the homicidal act," need only have "the specific intent to commit the underlying felony." (*People v. Vang* (2022) 82 Cal.App.5th 64, 81, 88.)  Since Fregia does not contest that he intended to commit arson or that he directly perpetrated the killings, he fails to demonstrate any error in the trial court's determination that he remains liable for felony murder as the actual killer.

III.
DISPOSITION

The March 5, 2025 order denying the petition for resentencing under section 1172.6 is affirmed.

7

_____
Humes, P. J.

WE CONCUR:



_____
Langhorne Wilson, J.



_____
Smiley, J.

*People v. Fregia*  A172860

8